This is Francis X. Doherty v. School Dist of Philadelphia. Mr. Rosenweig Thank you, Your Honor. Will Rosenzweig on the joint appellants, Estelle Matthews, Leroy Nennery, and the estate of Arlene Ackerman, I'd like to request three minutes for rebuttal. Mr. Rosenzweig At request will be granted. Mr. Rosenzweig Thank you, Your Honor. May it please the Court. This appeal presents the question of whether a high-level public employee, whether his speech is unprotected by the First Amendment, where the speech concerns and undermines the specific program with which the employee was tasked with carrying out, where the speech impugned the integrity of the superior to the employee on that project, and where it caused widespread disruption to discipline and harmony within the organization. The answer to this question must be yes for two reasons. First, because under the Pickering Balancing Test, the... Mr. McNerney The answer to that question might be yes, but I wanted to answer what I understand your opponent's main position to be, which, particularly in light of Lane and the 28J letters that came in, that in light of Lane, quote, this is Lane v. Franks, the critical question under Garcetti is whether the speech itself is unprotected and is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties. That's the point that they're pushing at us. This may have concerned his duties, but making a report to the FBI, going to the press about these perceived wrongdoings that was not part of his usual duty, and under Lane, interpreting Garcetti, this is not unprotected activity. He's speaking as a citizen. Why don't you speak directly to that, if you will? Mr. McNerney Yes, Your Honor. I have three points in response to that. The first is that, regardless of two sentences in that opinion, the case in general dealt with a specific narrow question, granted cert, on whether truthful subpoenaed testimony given in a criminal trial was protected speech under Garcetti where it was not part of the employee's specific job duties. And the court cited this court's case in Riley to contrast with the decision below and to say that there was a circuit split. So I think that that despite- Mr. McNerney So you think it's only about subpoenaed in court testimony, and Frank v. Lane's got no impact beyond that setting? Mr. McNerney I would say, yes, first. But I have a second point, which is that, if you look at those two sentences and you want to describe them with the kind of meaning that a penalty does- Mr. McNerney Well, it's the court's sentences. We're not making them up. Mr. McNerney That's true, Your Honor. I would say that in the context of that case, what you see is that the court was essentially saying, you can't say that anything that concerns an employee's duties, anything, is speech as an employee. And that's exactly the position that appellants have put forward here. Mr. McNerney So you'd agree that that's indeed clearly established law, that Lane didn't make up some new rule. It applied stuff that's been around for a long time? Mr. McNerney To the extent that you interpret it the way that we interpret it, which is that, well, let me expand upon that, which is that the way that we read those two sentences is to say what we put forward in this case, which is that under Garcetti, as this court just said in Pinnit, it's not whether the exact type of speech, in other words, as the district court identified in this case, whether reporting misconduct to the press or reporting misconduct in general is within the employee's job duties. What this court has said is, and what we interpret Lane's two sentences to be consistent with, is that where you're reporting misconduct regarding your own task with which you're in charge of carrying out, you're necessarily acting in furtherance of your job duties. And so it's not merely touching upon your job duties. You're acting in furtherance upon your job duties. And I would say that nothing in the Lane two sentences contradicts that. In fact, if you look at Lane, if you take the district court's position or if you take Pelley's position, they say that it's the type of speech, it has to be the type of speech, reporting misconduct. And if that were the case, why would the Supreme Court in Lane grant cert on the question of whether the speech at issue was not within the employee's job duties? And the Supreme Court didn't stop there. That should decide the question. But it went on to say where the speech which was not within the job duties also involved truthful subpoenaed testimony in a criminal trial. And so it seems to me clear that Lane is narrowing itself to just that circumstance. And it doesn't apply to circumstances that we have here, where an employee is reporting misconduct directly regarding the program that he was in charge of. Let's assume for a minute you're correct on that. You want us to grant summary judgment to your client on the grounds of qualified immunity, correct? That's correct, Your Honor. And to do so, there have to be no material facts in dispute, correct? Yes, and the facts won't cast the light most favorable to the plaintiff. All right. And in that vein, at your brief, you claim that Daugherty chose to desert his duties and speak to the press instead of Ackerman, correct? Yes, although I say that that perhaps is, that one sentence is perhaps not the most artfully worded in our brief. But we would say that he chose to speak to the press, which was not a part of his, which was a part of his, regarding the program that was in his control, that was part of his job duties. All right. So, but you're saying the program was in his control, correct? Correct. And Daugherty's brief at page 9 claims that Daugherty was not responsible for the camera project at the time he spoke out. Yes, Your Honor. It's a classic factual dispute. I would submit it's not, Your Honor, because it's frankly stunning that Appelli would contend that. And I can cite to the record, and only from facts in the record that are directly from Appelli's own statement, Appelli's own deposition testimony. First of all, if you look at the complaint, Joint Appendix page 49, paragraph 73, the complaint says this program was related to capital projects, capital projects was directly within Mr. Daugherty's control. Well, that's true. Initially, are you saying Ackerman did not remove Daugherty from the camera project? I would say two things to that, Your Honor. First... I think that was a yes or no. We would say... Did Ackerman remove Daugherty from the camera project? No, Your Honor. Okay. And then cite to the record where we know that. I would cite to the record in Joint Appendix page 94... By the way, I think I said that backwards. Did Ackerman remove Daugherty from the camera project? Same answer, no, right? The answer is yes. The answer is still no. Okay. And I would say to address Appellee's point that we need to... Wait, wait, wait. Where in the record? Yeah, don't we have it in the record? My understanding of the record is that Ackerman removed Daugherty from the camera project. Obviously, I'm mistaken. According to your view, I need you to show me where I'm mistaken. In the Joint Appendix, excuse me, pages 8 and 9, the District Court held that managerial responsibility was transferred. And what we would say is that Mr. Daugherty was not removed from his responsibility in carrying out the program. Well, that seems to be an awfully fine distinction that will turn on some factual determinations, right? November 2010, there's a meeting held after Mr. Boozer complains to Ms. Ackerman that he's not getting the cooperation he wants, and Mr. Nunnery holds a meeting, and Mr. Daugherty is explicitly not invited. And there's a meeting that takes place about the cameras program where he is excluded. And from there forward, one can make a reasonable argument that he is excluded. Why isn't that a factual issue that's supported in the record that is of the sort that one would say in an interlocutory appeal on a qualified immunity question, we just don't have jurisdiction to deal with, period. Well, Your Honor, I would have some instances in the record to dispute that, but I do want to move... There you go. Dispute it. But the point is, if it's a dispute, don't we have a jurisdictional problem? I misspoke, Your Honor. To say that that's not the facts. But I do want to move to the general point, which is that even if that's true, it's irrelevant under these circumstances. And I think that's the more important thing. Well, let me give you... I have a laundry list here, so you're going to have to tell me why all these are irrelevant or why I'm mistaken. You claim that the investigation occurred to determine the misconduct, correct? I would say that you can accept the plaintiff's allegations that that part of the motivation was to discover who was speaking to the press, and that won't affect the analysis here. All right. So you're going to concede that point for purposes of summary judgment that the reason that you hired the law firm was to find the source of the leak? Only that that was one... One reason?  Okay. Now, what about you claim in your brief at Page Six that the plaintiff in Page 29, no investigating entities found impropriety on the part of the school district, right? And in Dougherty's brief, they claim the only entity that found anything was the school district's own outside investigator. And the fact that the FBI didn't bring any charges doesn't mean that the FBI made a finding. Is that wrong? I think it's completely irrelevant, actually, whether or not Mr. Dougherty was right. And Pelley makes that exact point on Page 44 and 45 of their brief. The issue here is whether Mr. Dougherty's reasonable mistake or correct assertion was protected under the First Amendment. Okay. All right. But you've answered my question. You say it's irrelevant. What about policymaking power? You say Dougherty was a supervisor responsible for providing strategic direction. He was part of the cabinet. He made $144,000. They say that Dougherty was not a policymaker. He's one of many who worked to implement Ackerman's policies. He did not have a close working relationship with Ackerman. Do you concede that that point is true, but yet it's irrelevant again? Or do you say that that's not correct? I would say we do not concede it. It's not essential to our argument, but I would like to talk about it for a few moments because it's important to understand that policymaking is a word that was used in Pickering, it was used in Sprague, and it's a legal determination. What we have not contested is any elemental fact that the district court could use to make a judgment about whether Mr. Dougherty was a policymaker. And if you look at the facts, they don't dispute that he was the 13th highest paid employee in the school district. They don't dispute the fact that he was in charge of half a billion dollars in budgetary outweighs for the school district. But they do dispute, and dispute very vociferously, that he held a position or had a relationship with Ms. Ackerman or Mr. Nunnery that was fairly say that this was a close working relationship where on a Pickering balance that it would be unduly disruptive. That factually, that relationship and the way it functioned was not such as to support that conclusion. It's undisputed that Mr. Dougherty was two levels removed from Dr. Ackerman, that Mr. Dougherty was one level removed from Dr. Nunnery, and that Mr. Dougherty reported directly to Dr. Ackerman on the camera project. If you look at this court's recent decision in Kimmitt, the facts are nearly identical. The only difference being that Mr. Kimmitt in that case was three levels removed from the Attorney General who he criticized, and the record showed there that there was really no working relationship whatsoever. Does Dougherty's speech deserve more protection since it was made to the press as opposed to Kimmitt's speech that was made through the chain of command? This court in Brown v. Montgomery County and in Coer v. Bird, a case that was discussed in the district court opinion in Brown cited by Apelli, the employee in that case, both of them, made statements to the press. In both cases, this court held that they were unprotected under Garcetti. And so I would say that, yes, there are important interests when someone speaks to the press, but external speech should be considered as a general category, whether it's external to a government agency, another government agency, or to the press. But it is part of the balancing test. I would say that it's, yes, we're focusing on the fact that there are five cases we've cited in our brief that were, even under, even with strong interests that the district court identified of alleging corruption, this court has found time and time again that it can be outweighed. So that may be on one side of the balance. But what we've shown in our brief, and I submit to you, is that if you look at all the factors that were identified in Rankin v. McPherson that comprised disruption, there are overwhelmingly stronger than what this court has found to be unnewly disruptive in similar circumstances in other cases. I mean, there's a factual dispute as to who caused the disruption, right? I disagree with that, Your Honor. I want to actually... At page 49 to 50, Doherty says that your response caused the disruption. Don't they allege that? They do allege that, yes. And how do we know for a fact that that's incorrect? I would say, look to the undisputed facts in the record. There's two elements that caused the disruption here. First, let me just say that Underwaters v. Churchill, the only question is whether there's reasonable disruption, whether it was reasonable ex-ante. And I would say, I would submit to you, put yourself in Dr. Ackerman's position. You had someone who's alleged widespread corruption in the government. And regardless of whether or not it was in part based on retaliation, any time there's major allegations of corruption in the  into those allegations. Is your position that any time there's an allegation of corruption, an internal employee, by definition, is creating more disruption than it's worth? I mean, that's what pickering is about, right? It's about balancing things. And doesn't the law say that when you're talking about what's going on in corruption, it's got the highest level of First Amendment protection? That's true, Your Honor. Okay. But it can be outweighed, as the Court has said. Well, it can be. But it doesn't mean that you can come in and say, oh, this was really disruptive. I mean, you're absolutely correct. Any time somebody comes in and says, this is a very corrupt system, that's going to be disruptive. That assertion by itself can't be legally dispositive, or you'd never have protection for a whistleblower, right? It can't alone be legally dispositive. But what we have here is, one, we have reasonable predictions of disruption. We have actual disruption, both regarding the internal investigation. Except that's true. Except it's true. We also have a situation, Your Honor. I'm just asking you, even if that's true, how do you, as a matter of law, win by saying, you know, on a qualified immunity, pickering, balancing, there's no way to see this any other way than we're telling you. In Sprague, the Court said hierarchical proximity is a crucial variant, and here we have a situation where it's, I understand what you're saying about their allegations, but the fact is, the elemental facts that we've cited are undisputed. And if you look at the elemental facts regarding his position in the school district, regarding that he was two levels removed from the school district. So position's dispositive. Even if the boss treats the person like a lower-level employee, the position's dispositive. None of these factors are dispositive, Your Honor. In conjunction, they all prove that the pickering, balancing test weighs heavily. I'd also like to just briefly mention in this case... Mr. Rosenzweig, we'll have you back on report. Thank you, Your Honor. Ms. Matheson. Thank you, Your Honor. Lisa Matheson here for Frances Docherty. Mr. Rosenzweig just urged the Court to look at the elemental facts, but if the Court does that, the Court is exceeding its interlocutory jurisdiction. His opening sentence to this Court presented a case that is contrary to the facts that are properly in the record, because as this Court has said time and time again, in Blalock, in Zicardi, in Forbes, in Riley, in... Do you want to distinguish Kimmitt? Because they're leaning pretty hard on him. Absolutely, Your Honor.  number of ways. First, the only speech that was held protected in Kimmitt, the only speech that was citizen speech, was the lawsuit. And his internal complaints were held to be employee speech, consistently with Lane and consistently with our position. Kimmitt's lawsuit sued not just the Attorney General, but the entire chain of command and his entire staff. I should refine that. It accused them all of misconduct. I don't know if they were all literally defendants. But the way that this Court's decision in Kimmitt relates the lawsuit is accusing... Either move over a little bit or move the microphone towards you. There you go. This Court's decision in Kimmitt explains that the lawsuit accused the entire staff of misconduct. Moreover, Mr. Kimmitt thereafter took the position that he could not be reviewed by his supervisors any longer as a result of his lawsuit. He virtually conceded, Your Honors, that he was creating, with his lawsuit, disruption to his employer because he took... What about the position assertion that in Kimmitt 3, the hierarchical positioning was a very significant factor? And if it was significant there, it's even more significant here because Mr. Dougherty was closer to the top. It was not so significant, Your Honor, in Kimmitt because, again, the only speech that was held protected even... The only speech that was identified as citizen speech was the lawsuit in which he accused the entire staff of wrongdoing. And so the issue of his position in the hierarchy actually did not... Was not outcome determinative on that. Moreover, Your Honors, to return to the question of what the facts are before this Court, the District Court stated, and this Court is bound by this set of facts that the District Court identified, that Mr. Dougherty not only had virtually no one-on-one contact with Armin Ackerman before the facts that are at issue, but he did not hold a high-level policy-making position. He implemented policy alone. His fancy title, Your Honor... Yeah, that title shouldn't mean something to us. Title's one factor, Your Honor, but this Court is not in a position to reassess the District Court's conclusion that Mr. Dougherty was not, in fact, in hierarchical proximity to the people whom he criticized, nor did he hold... He reported directly to Nunnery, right? Didn't he report directly to Mr. Nunnery? He did report directly to Mr. Nunnery, Your Honor. However... How can you say that that's not close proximity? He's the direct report. Because, Your Honor, for two reasons. Number one, he was the direct report of Mr. Nunnery, but not of Dr. Ackerman, and the position that the appellants have always staked out is that Mr. Dougherty's speech criticized Dr. Ackerman. That is the speech, the speech acts that are at issue were criticisms of Dr. Ackerman, not of Dr. Nunnery. Moreover, Your Honor, Pickering refers to the personal and confidential relationship, not mere proximity, and that is important because the hierarchical relationship is one factor, but it's a factor for a very important reason, and that is to measure disruption. And disruption, the fulcrum there, is the personal and confidential relationship that will be disrupted by the criticism. That comes from Pickering. It's not a new rule. If we took... If we took the facts as you alleged them, or let's put... Let me reframe that. If we took the facts as the district court took them, and accepted those as the factual record, would we have jurisdiction to consider issues like, for example, whether the Supreme Court's pronouncement in Lane changed the landscape of the law? Whether the statements in Garcetti were such that it was clearly established law that was being violated by the defendants when they took the action they took? Would we not have jurisdiction to make those decisions? You will, Your Honor. And Your Honors will have jurisdiction to make those determinations based on the facts that the district court identified. Because I was under the impression that you were fighting pretty hard against jurisdiction. Did I misunderstand you? Is it completely, or... It would be helpful, at least for me, if you could tell us what you concede we do have jurisdictions. The court has jurisdiction to determine whether Mr. Daugherty spoke as a citizen under Garcetti and now under Lane, given the facts that the district court identified, not the facts that Mr. Rosenzweig is presenting to the court. The court has jurisdiction as well to review the application of the Pickering balancing test as applied to the facts that the district court identified. Because that's a question of law, right? Absolutely. It is under this court's jurisprudence. Not all circuits agree, but this court does identify it as a question of law. However, that includes the fact that the district court said there was a material dispute as to the degree of disruption and as to the causation of the disruption. Appellants don't challenge... Once we get there, shouldn't we just stop then on Pickering? Your Honors can review the facts that the district court found, and one of the factors for Pickering, for example, is Mr. Daugherty's position. But I mean, I was talking about disruption. If we agree with you that there's a dispute of fact regarding the disruption, then should we just refrain from analyzing that Pickering balancing any further than that? I mean, that strikes me as an automatic affirmance and remand, no? Functionally, Your Honor, it probably is in terms of Pickering balancing, given that this speech occupies the highest rung of First Amendment protection. The defendants would have to show a significant degree of disruption, particularly because we're here on denial of summary judgment. They're saying don't even bother with further factual development on disruption. Right, and do you want us to analyze that? Because I'm disinclined to do so, speaking only for myself. Isn't that the province of the trial court? Trying to draw a fine distinction, Your Honor, absolutely, that is the province of the trial court. This court could theoretically re-examine the Pickering balancing, but it would be doing it in the context of speech that occupies the highest rung of First Amendment protection and a disputed degree of disruption. I agree with Your Honor that the outcome of that Although in your brief you say we can't consider the appellant's Pickering argument at all. Because the only arguments that they make, Your Honor, are factual arguments. And so to refine that, Your Honors may consider the application of Pickering to the facts that the district court found. But none of that is what they argue. What they present to the court is, for example, the idea that Mr. Daugherty had a closed personal relationship with Arlene Ackerman. The idea that he was specifically tasked with this project. Would all of that be immaterial if there was the determination  Does clearly established need to be our first order of business? The court has discretion to take that question in whatever order it would like. But if the court finds that the law was not clearly established, then qualified immunity would protect the individual. So did Lane change the landscape? That was my question. It did not, Your Honor. And this is extremely important. Because as Your Honor mentioned earlier, Lane located the rule of decision in Garcetti. And Lane, I think, had some veiled incredulity that they were still having to, this certainly came out at oral argument, that they were still having to tell appellants and circuit courts that subject matter is not dispositive. But Lane reiterated so strongly that this has been the law since Garcetti. That subject matter is one factor, not a dispositive factor. And that the question is whether the act of speaking was part of the employee's job duties. What's your response to the argument that we're hearing from Mr. Rosenzweig that this has only to do with subpoenaed testimony in a criminal action. It doesn't go any further than that. End of story. If that were true, Your Honor, Lane would have distinguished Garcetti on that basis. Instead, Lane distinguished Garcetti on the basis that the employee in Garcetti had spoken pursuant to his official duties, whereas the employee in Lane had not. So Lane certainly, while emphasizing the duty of a citizen to give sworn testimony that is truthful, did not treat that as dispositive, because if it had, it would have distinguished Garcetti on a different basis. Moreover, the policy interests that we're talking about in this case are identical. Mr. Daugherty went to the FBI, and there was a DOJ amicus brief in Lane as well, talking about the importance of protecting whistleblowers. Mr. Daugherty also went to the press, but that is, of course, the topic of a whole different line of First Amendment, free speech, societal interest cases. So Lane changed nothing about his analysis. And moreover, when Mr. Should it make a difference to us that there's some statement by Judge Sanchez that maybe this is a close case? I mean, if there's a reference to something being close, does that tell you that, well, maybe when it's close, you can't really say that it's so clearly established in the law that the case ought to be one where qualified immunity is withheld from the government actors? It should not, Your Honors, for a number of reasons. First, qualified immunity on the clearly established prong depends upon the context as the plaintiff alleged it.  by Mr. Daugherty's allegations, under which it is not a close case. Second, however, even though Judge Sanchez said, used the tilting phrase, and said that it was a closer determination, the court has never held that the fact that there are pickering issues in the balance would foreclose protection under the clearly established prong. The appellants misstate McGreevy. In fact, McGreevy expressly rejected that position. And this court, of course, is bound by that. And moreover, on the clearly established prong as well, we know that the plaintiff's, the fact that the plaintiff's speech occupies the highest form of first-amendment protection is something that this circuit, Judge Slogar, has repeatedly stated, and other panels, of course, in the circuit have repeatedly stated. It would be absurd to hold that the disruption inherent as appellants concede in the revelation of official misconduct is sufficient to outweigh the employee's interest in speaking and society's interest in hearing the speech. That absurd language comes from a 1982, I think, decision. So when we talk about clearly established, and when we look at the set of facts that the district court identified, which is what this court is bound to do jurisdictionally, it is absolutely patent that nothing in recent jurisprudence has changed the law. All of the elements have been in place for many years, and that's all that the clearly established prong actually requires. Let me ask the question maybe in a little different way here on the clearly established. You'll acknowledge that both Garcetti and Pickering are two extremely fact-intensive legal standards. As such, how can we find that they are clearly established as applied to the school district in this case if the legal standard itself depends on the facts or the actions alleged? It's an interesting intersection of the jurisdictional issue and the clearly established issue. First, of course, to take the jurisdictional piece of that, the court is bound by the facts that the district court has identified and on the clearly established prong, also bound by the facts alleged. Moreover, what the court must do is separate out the legal question from the factual question, and that is, in fact, what the court... Well, Garcetti and Pickering were not up on interlocutory review, but the fact that the court need to distinguish the legal issue from the factual issue is only heightened in this case because this court's interlocutory review is narrower than its final order review. Finally, Your Honor, the clearly established case law says expressly that precise factual correspondence is not necessary. It's the principles that must have been clearly established. So as to give a reasonable official some factual orientation and the principles that have established that a public employee who reveals official misconduct to the press and to law enforcement, creating minimal, if any, disruption only that inherent in the revelation, the salutary revelation of misconduct, enjoys First Amendment protection and may not be retaliated against as Mr. Garcetti was. Okay. We thank you for your argument and, Mr. Roszweig, we'll have you back on rebuttal. Thank you, Your Honor. Briefly on the jurisdictional point. The jurisdictional question is whether this relates to sufficiency of the evidence or whether it relates to a question of law. As Appelli concedes, they all relate to questions of law and therefore jurisdiction exists. Now the question is, what is the standard of review? We agree. You have to take the undisputed facts in light most favorable to the plaintiff. If you'd like to confine your factual analysis just to the district court's opinion, you may. We submit there are other undisputed facts that should be taken into account. But regardless, you must consider the disruption issue because it's a question of law. And so even if it relates to factual issues, then just assume the facts in the light that the district court did and apply those facts here. And if you do that, you'll find that there was significant reasonable predictions of disruption. Turning to the Garcetti issue, our position is not just is it the subject matter. What courts in this circuit and also in other circuits have found is that when you're specifically reporting misconduct regarding the central task or one of the central tasks that you're charged with carrying out, then it is necessarily pursuant to your job duties in order to report that misconduct. How could Mr. Daugherty here say that what he was doing was not in furtherance of his job duties? Well, it was in furtherance of his job duties when he told his superiors that this was an unapproved contractor. Right? And isn't that what he told his superiors? Did he not express concern to the superiors that they were going to pick an unapproved contractor? Actually, the record according to his deposition testimony is that he did not speak up at the September 23rd meeting. At any time thereafter? Even if that were true, it doesn't affect the facts. At any time thereafter, are you saying he never claimed that they were choosing and that IBS was unapproved? Well, certainly he believed that and said that to people in the office. Alright, and then they said well, we don't care. In essence, their actions said, we don't care. So, then what was he supposed to do? You want us to establish a rule that he was then barred from going outside the chain of command and blowing the whistle on what he believed was an illegal act? First of all, I'd say he did not go up the chain of command because he did not go to Dr. Ackerman regarding this, but more than that, it's important to recognize the public policies underlying Garcetti which is that when you have a high-level public employee who's charged with carrying out in this case, Dr. Ackerman's directives, that's where you set aside some of your First Amendment responsibilities. In Waters, Justice O'Connor talked about Sure, you do set aside some of your First Amendment, but Lane seems to be saying that there is a difference between speaking pursuant to your duty and speaking about something that may be I don't want to speak for Judge Hardiman, but I understood the point he was trying to get you to respond to is talking internally and saying, hey look, IBS is not an approved contractor this is a problem. You could say that's part of his duties of overseeing capital projects, but Stein needed an effort to get that attended to going to the FBI is not part of his duties. There's nothing in his job description that says, and you will report to the FBI on a regular basis, or you will meet with reporters for the Philadelphia Inquirer they relate to his duties but they're not part and parcel of his duties and that's what Lane is talking about. Now, is that a correct distinction in the law? And if it is a correct distinction in the law, are we wrong factually about what the district court was looking at and making the judgment the district court made? This has nothing to do with factual issue, your honor. I believe you are incorrect about the standard, but I also want to make sure as part of my answer I know that my time's up, is just to mention qualified immunity here because the qualified immunity issue is important. To the extent that Lane extends Garcetti, and I respectfully disagree with Apelli that it is clear from Garcetti that this is the line that the district court drew is correct, then therefore, as a matter of fact, this has to be qualified immunity. The law was not clearly established. Hold on. You said I thought I understood you to say that to the extent Lane added anything to the law, it was just that within a subpoena, context of a person testifying under subpoena in a criminal case, that would be protected. But I didn't understand you to be thinking there was something else going on that Lane was adding to the law. Did I misunderstand you? You didn't misunderstand me, but I'm saying to the extent this was when we had that moment earlier where I said it depends on how you interpret Lane. If you do interpret Lane in the way that Apelli suggests, then I think that was not clearly established in 2011. You don't think so? And you would have to look to Garcetti. You would have to look to I think Kohler and Brown, and that's one to return to your original point. What I wanted to say about Garcetti is in Kohler, you had a situation where the state dog warden did engage in two types of speech that was explicitly stated by the explicit position in his job by his employer were not part of his job. He spoke to the press. He was forbidden to do so, and he also filed state animal cruelty charges which he was not allowed to do so. This court found that in both circumstances that fell within his job duties because his job was to investigate animal corruption. If you look at the quotation that we cited in If you look If you look at the If you look at the quote we cited in McArdle McArdle expressly decided this question. Yes, it's the Seventh Circuit, but Casey, the distinction that Casey court made in the Tenth Circuit, and then specifically regarding reporting to the newspaper in Brown and Kohler in this court, the law was not clearly established that the line that the district court drew, i.e. the type of speech, the actual reporting misconduct, it was not clearly established in 2011 that that speech would have been protected. Mr. Rosenwig, thank you very much to both counsel for your arguments. We'll take the matter under advice.